IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,                          *

    Plaintiff,                            *

       v.                                  *          Civil Action No. DLB-22-441

COMMISSIONER OF CORR. WAYNE               *
HILL, et al.,
                                          *
    Defendants.

## MEMORANDUM

Self-represented plaintiff and state prisoner Donald R. Pevia alleges that, in response to an administrative complaint he filed and, months later, during and after a search of his cell in which correctional officers found contraband, the defendants violated his equal access, equal protection, due process, and First and Eighth Amendment rights.  ECF 1, at 5, 8, 10, 13.  He filed this civil rights action pursuant to 42 U.S.C. § 1983 against Maryland Division of Correction Commissioner Wayne Hill, Warden Gregory Werner, Acting Warden Richard Roderick, Lt. Vaughn Whiteman, Acting Warden Jeff Nines, Officer Smith, Warden Designee Keith Arnold, and the Secretary of Corrections.[1]

On August 12, 2022, defendants former Commissioner of Correction Wayne Hill, Richard Roderick, Gregory Werner, Keith Arnold, and Lt. Vaughn Whiteman filed a motion to dismiss, or in the alternative, for summary judgment.  ECF 11.  Pevia has not responded to the defendants' motion.  Having reviewed the complaint, the defendants' motion, and accompanying exhibits, the

---

[1] The Clerk shall amend the docket to include each of these defendants and to reflect their full and complete names where provided. Additionally, Jeff Nines, Officer Smith, and the Secretary of Corrections were named in the body of the complaint, but they were not added to the docket and were not served with the complaint.  For the reasons stated herein, the complaint is dismissed as to these defendants.

Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). The defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted.

## I.     Background

In March of 2020, Pevia, while incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed an administrative complaint, ARP NBCI-0505-20, regarding the denial of access to religious services. Pevia claims that when Roderick responded to the ARP, he committed perjury to justify his actions. ECF 1, at 13. Specifically, Pevia takes issue with Roderick's statement that all religious services were cancelled because of COVID-19. Pevia claims that services were not curtailed until March 19, 2020, and his grievance was filed two weeks earlier, on March 5, 2020. *Id.* Pevia claims that Roderick violated the "officers code of conduct." *Id.* Pevia contends that he followed all the proper procedures in pursuing his claim, but it was dismissed for not having been filed in the proper time frame to "cover up the defendants' actions." *Id*. Pevia argues that Roderick committed perjury to prevent him from properly exhausting his remedies in violation of his right to due process and in retaliation for having previously filed civil complaints. *Id*. at 14.

In a separate incident on December 9, 2020, while conducting a routine check of Pevia's cell, Whiteman and Officer Lambert smelled a strong odor of fruit. ECF 1, at 5; ECF 11-3, ¶ 2 (Whiteman Decl.); ECF 11-4, ¶ 3 (Lambert Decl.). They found a bag of fruit, which Pevia's cellmate admitted was his. ECF 1, at 5; ECF 11-3, ¶ 4; ECF 11-4, ¶ 3. The officers decided to search the cell after the bag with fruit was removed because the cell still smelled of ripe fruit. ECF 11-3, ¶ 5; ECF 11-4, ¶ 4. During the search, Whiteman found a transparent bag with fruit and liquid under the bunk which smelled rotten but did not appear to have fermented. ECF 11-3, ¶ 6;

ECF 11-4, ¶ 5.  Whiteman also found a pen with a "sharpened staple" attached to it.  ECF 1, at 5; ECF 11-3, ¶ 7; ECF 11-4, ¶ 6; ECF 11-2, at 2.  Pevia admitted the pen with the sharp tip was his and explained that he used it to cut designs in cardboard to make cards.  ECF 1, at 5.  Whiteman perceived the pen with the sharp tip to be a weapon, reported a weapon violation, and issued a notice of inmate rule violation to Pevia.  ECF 11-2, at 2–3; ECF 11-3, ¶¶ 8, 10.  Pevia was charged with violating Rule 105 – possess, use, or manufacture a weapon.  ECF 11-2, at 2–3.

Pevia complains that it was unfair for him to receive a rule violation when his cellmate was not issued a rule violation for the liquid and fruit combination found in the cell.  ECF 1, at 6.  Whiteman and Lambert explain that they did not issue the cellmate a rule violation notice because the fruit in the bags had not fermented and therefore could not be considered alcohol for rule violation purposes.  ECF 11-3, ¶¶ 6, 11; ECF 11-4, ¶ 8.

After the contraband was found in the cell, Pevia was handcuffed and escorted from his cell.  ECF 1, at 5; ECF 11-4, ¶ 7; ECF 11-3, ¶ 9.  According to Pevia, as they walked down the tier, Whiteman held the "weapon" over his head and said, "You gotta leave this religious shit alone in court," which Pevia took to refer to previous civil rights cases Pevia had filed against Whiteman.  ECF 1, at 5.  Whiteman denies saying anything like that and denies retaliating or discriminating against Pevia.  ECF 11-3, ¶¶ 12, 15.  In his ARP appeal, Pevia complained that Whiteman retaliated against him because he had challenged his authority.  ECF 1-2, at 5.

Pevia claims that when his personal property was packed and inventoried, his fan was missing and he was not issued the proper confiscation form for it.  ECF 1, at 5.  Pevia's property was inventoried on six occasions between July 19, 2019 and December 9, 2020, and a fan was not listed on any of those inventories.  ECF 11-2, at 22-30.  Pevia's July 18, 2019 property inventory, in contrast, listed a fan.  *Id.* at 31.  Pevia states that he gave that fan to another inmate when he was

assigned to segregation, but he does not say when this occurred. ECF 1-3, at 3. Whiteman denies seeing a fan among Pevia's property on December 9, 2020, and he specifically denies removing a fan from Pevia's property. ECF 11-3, ¶ 13.

Pevia was served a written notice of the inmate rule violation charging him with the Rule 105 weapons violation. ECF 11-2, at 2–4. He did not request any evidence be presented at the hearing, and he declined to appear at the hearing, instead opting for a waiver and plea agreement. *Id.* at 4–5, 13; ECF 1, at 6. The hearing officer considered Pevia's plea agreement and the statement contained in the notice of rule violation and found Pevia guilty. *Id.* at 9, 14. Pevia received a copy of the hearing officer's written decision as well as the Warden's affirmation of the decision. *Id.* at 12–17, 18–20.

On February 7, 2021, Pevia filed a grievance regarding the dismissal of his complaint concerning the weapons charge and confiscation of his fan, including a claim that Whiteman retaliated against him for filing civil rights complaints. ECF 1, at 8. Pevia claims that the defendants lied in their dismissal when they denied that Whiteman took a fan from Pevia's cell and complains that they refused to preserve the video footage as evidence. *Id.* Pevia contends that the "Defendants allow and permit NBCI staff to do as they please due to [] 'security issues' of reserving inmates videos. But if its beneficial for NBCI staff its not a security threat." *Id.* Whiteman was not responsible for investigating Pevia's complaint regarding his fan. ECF 11-3, ¶ 14.

On April 7, 2021, Pevia had a hearing before the Inmate Grievance Office ("IGO") on another matter. ECF 1, at 10. Pevia was placed in a three-piece waist chain and held in a strip cage for two and a half hours before the hearing. *Id.* In Pevia's view, this is a tactic used to discourage inmates from going forward with their hearing. *Id.* Department of Public Safety and

Correctional Services ("DPSCS") policy provides that restraints "shall be used" when moving a disciplinary segregation inmate within the institution. *See* https://www.dpscs.state.md.us/pia/index.shtml DOC 110.0006 Disciplinary Segregation (last visited Feb. 8, 2023). NBCI's policy for IGO proceedings provides that "segregation inmates shall be placed in three-piece restraints." ECF 11-2, at 33. NBCI's policy regarding restraint use during IGO hearings was published to inmates by distribution to Inmate Bulletin Boards. ECF 11-2, ¶ 23 (White Decl.).

At the time of the April 7, 2021 hearing, Pevia was a maximum-security inmate assigned to disciplinary segregation. ECF 11-2, at 34. During the hearing, Pevia was forced to remain in three-piece restraints. ECF 1, at 10. He claims the restraints prevented him from taking notes or presenting evidence properly or viewing his notes or case law. *Id.* While Pevia remained restrained, staff representatives were permitted to move freely and present their case. *Id.*

Pevia filed this lawsuit on February 18, 2022. His complaint, liberally construed, includes claims for violations of his First and Eighth Amendment, due process, equal protection, and equal access rights.

## II.    Standard of Review

The defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v.*

*Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'"  *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Accordingly, the Court must construe pro se pleadings liberally.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).  But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of

6

the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)).  Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'"  *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Pevia that he had the right to respond to the defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond.  ECF 12.  Moreover, the defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Pevia to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).  Pevia sought and was granted an extension of time to respond to the motion (ECF 13 and 15), but he did not respond.

The Court is satisfied that Pevia has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion, in part, under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III.   Analysis

#### A.  Official Capacity Claims

The defendants assert that they are immune from claims against them in their official capacity based on the Eleventh Amendment.  "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

In addition to consent, there are two other exceptions to Eleventh Amendment immunity: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law."  *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).  The first exception, abrogation by Congress, does not apply here.  Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  The second exception also does not apply because Pevia does not seek prospective injunctive relief.[2]

---

[2] Insofar as plaintiff seeks "[a] preliminary and perm[a]nent injunction ordering defendants to not withhold requested video footage when requested," this is a discovery request, not a request for injunctive relief.  *See* ECF 1, at 8, 16; *see also* ECF 15 (denying discovery request as premature).

Pevia's claims against the defendants in their official capacity are barred by the Eleventh Amendment and are dismissed with prejudice.

## B. Personal Participation: Defendants Arnold, Nines, Smith, Secretary of Corrections

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

The defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. Officials like defendants may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

To state a claim for supervisor liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional

injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Pevia has not alleged that defendants Keith Arnold, Jeff Nines, Officer Smith, or the Secretary of Corrections personally participated in the alleged constitutional violations. Pevia simply lists them as defendants without providing any specific allegations against them. To the extent Pevia alleges supervisor liability against these defendants, his claims fail because he has not alleged that any of their subordinates was responsible for the alleged unconstitutional conduct or that they were aware of a subordinate's conduct that "posed a pervasive and unreasonable risk of constitutional injury" and failed to respond adequately. *See id.* Accordingly, Pevia's claims against Arnold, Nines, Smith, and the Secretary of Corrections are dismissed without prejudice.

### C. Due Process and Retaliation Claims against Roderick

In Count Four, Pevia claims that Roderick violated his due process rights and retaliated against him by committing perjury in an ARP response regarding congregate prayer. ECF 1, at 13.[3] Specifically, he alleges that Roderick said that there were no congregate prayer services available to Pevia due to COVID-19, even though Pevia had requested congregate services before the defendants ceased offering them due to COVID-19. *Id.* The defendants argue that res judicata bars Pevia's claims against defendant Roderick. ECF 11-1, at 16–17. The Court agrees.

"Res judicata traditionally bars a party from asserting a claim in a later suit once a court has reached a final judgment on the merits of the same claim in an earlier suit." *E. Coast Repair & Fabrication, LLC v. United States through Dep't of Navy*, 16 F.4th 87, 90 (4th Cir. 2021). Under federal law, this doctrine applies when there are "(1) a final judgment on the merits in a prior suit;

---

[3] The Court addresses Pevia's substantive claims in an order that avoids redundancy and provides clarity for the reader.

(2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of the parties or their privies in the two suits." *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 820 n.7 (4th Cir. 2022) (quoting *See SAS Inst. Inc. v. World Programming, Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017)). "[A] dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 (1981) (quoting *Angel v. Bullington*, 330 U.S. 183, 190 (1947). And, "dismissals with prejudice . . . are treated as final judgments on the merits for purposes of res judicata." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 99 F. Supp. 3d 610, 617 (D. Md. 2015) (quoting *Jacobs v. Venali,* 596 F. Supp. 2d 906, 914 (D. Md. 2009)). As for whether the causes of action are the same, the Court "asks 'whether the claim presented in the new litigation "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment"' and whether 'the claims could have been brought in the earlier action.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (quoting *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008)).

In *Pevia v. Werner, et al.*, Civ. No. ELH-21-111, filed on January 31, 2021, Pevia challenged Roderick's handling of one of his grievances regarding congregate prayer at the beginning of the pandemic. He alleged, *inter alia*, that he complained in an ARP request that he was not put on the list to attend congregate religious services, and Roderick found his complaint to be without merit. ECF 1-1 in *Werner*, at 26, 28; *see id.* at 1 (March 5, 2020 grievance, which Roderick denied on May 12 because "[d]ue to the current viral pandemic, congregate services are not being conducted" and because Pevia, who was "assigned to disciplinary segregation," was "not eligible to attend"); *id.* at 4 (appeal of March 5 grievance, in which Pevia contended that Roderick's response was "unreasonable and perjured" because "the CV-19 [pan]demic was not even a factor when the complaint was filed"); *see also* ECF 18 in *Werner*, at 2 (asserting "Roderick committed

perjury by claiming plaintiff was denied access to service due to the COVID-19 crisis").   He claimed Roderick violated his First Amendment free exercise right.   ECF 1-1 in *Werner*, at 28. The Court dismissed the claim against Roderick for failure to state a claim.   ECF 22 & 23 in ELH-21-111.   The Court reasoned that Pevia had not alleged that Roderick had the knowledge necessary for supervisory liability and, insofar as Roderick denied Pevia's ARP request, "[d]ecisions made during the administrative grievance do not alone establish liability."   ECF 22, at 20 in ELH-21-111.   In dismissing Pevia's claim against Roderick, the Court did not expressly do so with prejudice, but "[a] district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."   *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985).

Pevia's allegations in support of his claim against Roderick that was dismissed with prejudice are identical to the allegations supporting his claims against Roderick in this case. Therefore, he could have asserted in *Werner* the claims he now brings against Roderick, which satisfies the second element of res judicata.   *See SAS Inst.*, 874 F.3d at 378.   His claims against Roderick are, therefore, barred by the doctrine of res judicata and again dismissed with prejudice. *See Okon v. Am. Servicing Co.*, No. GJH-15-2481, 2016 WL 4250252, at *4 (D. Md. Aug. 9, 2016) (concluding that, where *res judicata* barred the only claims over which the Court had jurisdiction, amendment would be futile and therefore dismissal with prejudice was appropriate); *see also US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010) ("The district court does not abuse its discretion in denying leave when 'amendment would be futile,'" such as when amendment "would have no impact on the outcome of the motion to dismiss." (quoting *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001))).

### D. Retaliation Claims against Whiteman

In Count One, Pevia claims Whiteman retaliated against him for filing two civil suits against Whiteman and other employees of the Department of Corrections. ECF 1, at 5. He alleges that, on December 9, 2020, Whiteman confiscated his fan and issued a rule violation notice in which he said Pevia had a weapon in his cell. *Id.* Pevia claims that Whiteman acted in retaliation for two civil rights cases he filed in this Court, *Pevia v. Moyer*, Civ. No. DLB-19-327 and *Pevia v. Werner*, Civ. No. ELH-21-111. ECF 1, at 5; *see* ECF 11-2 (notice of inmate rule violation).[4]

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (alterations omitted). To prevail on a First Amendment claim for retaliation, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct." *Id.* (quoting *Martin*, 858 F.3d at 249). A defendant's conduct adversely affected the plaintiff's First Amendment rights if the conduct "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)). To establish a causal relationship, the plaintiff first must "show [by direct or circumstantial evidence] that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Shaw*,

---

[4] Pevia states that Whiteman found in his cell the "sharpened staple in the tip of a pen" and issued the rule violation notice on December 9, 2021, in retaliation for "civil suits ELH-19-327 and ELH-20-111." ECF 1, at 5. The incident occurred on December 9, 2020, and the proper case numbers are DLB-19-327 and ELH-21-111. ECF 11-2; *see* ECF 1, at 4 (describing exhaustion of administrative remedies between December 22, 2020 and October 27, 2021).

59 F.4th at 301 (quoting *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2000)).  That is, "he must show '(1) that the defendant[s were] aware of [his] engaging in protected activity' and (2) 'some degree of temporal proximity to suggest a causal connection.'"  *Id.* at 130–31 (quoting *Constantine*, 411 F.3d at 501).  Then, "[t]he burden . . . shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity."  *Id.* at 131.  The Fourth Circuit treats prisoners' retaliation claims "with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Pevia filed Civ. No. DLB-19-327 against NBCI employees, including Whiteman, in 2019.  The rule violation notice was issued and the alleged fan confiscation occurred in December 2020.[5]  The Court assumes that Pevia could show Whiteman knew Pevia had filed a lawsuit against him.  Even so, the defendants have shown that Whiteman would have issued the rule violation notice regardless of the lawsuit.  Pevia alleges, and therefore concedes, that on December 9, 2020, he possessed a "sharpened staple in the tip of a pen" and that it was sharp enough to cut designs in cardboard.  ECF 1, at 5.  Possessing, using, or manufacturing a weapon is against prison regulations.  ECF 11-2, at 2–3.  Additionally, the regulations required that the perceived violation be referred for a disciplinary hearing, and Pevia pled guilty before the hearing.  *See* Code Md. Regs. § 12.03.01.05.C(2)(d)(i); ECF 1, at 6.  Therefore, the defendants have shown that Whiteman would have issued the notice based on the perceived rule violation even if Pevia had not filed suit against him.

---

[5]  Pevia filed Civ. No. ELH-21-111 on January 13, 2021, a month *after* the December 9, 2020, cell search.  The alleged retaliatory conduct relating to the cell search that predated the lawsuit could not have been retaliation for that suit.

As for the alleged confiscation of his fan during the cell search, this aspect of the retaliation claim also fails as a matter of law. The defendants submitted six property inventories from July 2019 through December 9, 2020, the day of the cell search, that show Pevia did not have a fan at the time of the search. ECF 11-2, at 22–30. Whiteman swears in an affidavit that he did not see or take a fan from Pevia on that date. ECF 11-3, ¶ 13. Pevia has not offered any evidence to the contrary such as an affidavit or documents showing he possessed a fan when Whiteman searched his cell.

Whiteman is entitled to summary judgment on Pevia's retaliation claims.

**E. Equal Protection Claim**

In Count One, Pevia alleges that, following the December 9, 2020 cell search, he received a weapons charge but his cellmate was not charged with possession of alcohol "even though a moving cart had to be brought to the cell to be packed up [because] it was so much wine." ECF 1, at 6. The Court liberally construes this as a claim that unidentified defendants violated Pevia's equal protection rights.

The Equal Protection Clause directs the States to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, a prisoner first must show that (1) he was treated differently than similarly situated inmates and (2) "the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Then, if the plaintiff "makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Id.* at 730–31 (quoting *Morrison*, 239 F.3d at 654). In the prison context, "to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner," the

Court "determine[s] whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Id.* at 731 (quoting *Morrison*, 239 F.3d at 654–55).

Pevia fails to meet the first requirement—that he was treated differently than a similarly situated inmate. The officers who searched the cell determined Pevia was in possession of a weapon, an inmate offense that requires referral to a formal hearing. ECF 11-2, at 2–3; Code Md. Regs. §§ 12.03.01.04.B(2)(a) & (C)(6), 12.03.01.05.C(2)(d)(i). Pevia's cellmate, in contrast, was found to possess fruit in a liquid. Because the fruit had not fermented, the officers determined there were insufficient grounds to charge the cellmate with an alcohol violation. Under Maryland regulations, a weapons violation is one of the most severe inmate rule violations, whereas unauthorized possession or use of alcohol is a significantly lower offense. *Compare* Code Md. Regs. §§ 12.03.01.04.B(2)(a) and 12.03.01.04.C(6), *with id.* § 12.03.01.04.F(2). Further, when an inmate is charged with a weapons violation, the shift supervisor is required to refer the matter to a hearing officer for a formal disciplinary hearing, whereas an alcohol violation may be referred for informal disposition. *Compare id.* § 12.03.01.05.C(2)(d)(i), *with id.* § 12.03.01.05.C(2)(d)(ii). Given that Pevia's cellmate possessed fruit in a liquid that was not even alcohol, Pevia has not established that he and his cellmate were similarly situated.

Pevia has not proffered any allegations or provided any evidence that he was treated differently than a similarly situated inmate. The defendants have offered evidence that he was, in fact, not treated differently than a similarly situated inmate. They are entitled to summary judgment on the equal protection claim in Count One.

**F. Due Process**

In various counts, Pevia claims that the defendants denied him due process when they pursued disciplinary charges against him for possessing a weapon (Count 1, ECF 1, at 5), when

they failed to preserve or consider video evidence regarding the loss of his fan (Count 2, *id*. at 8), and when he was restrained in his IGO hearing (Count 3, *id*. at 10-11).

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1.  To prevail on a due process claim, a plaintiff first must establish the existence of a property or liberty interest for which "procedural protections are due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Then, the plaintiff must show the defendants deprived him of that interest without providing him with the protections he was due.  *Id.*  Imprisonment does not deprive a prisoner of a protected liberty interest unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 222–24 (2005) (quoting *Sandin*).  The comparison of the conditions the plaintiff challenges to "those they could expect to experience as an ordinary incident of prison life necessarily is fact specific," whereas "whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997).  "[E]ven when an institutional restriction impinges a specific constitutional guarantee, . . . the practice must be evaluated" with great deference to the prison administrators' decisions and with "the central objective of prison administration, safeguarding institutional security," in mind.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections.  *Id.* at 557, 558.  These include: (1) advance written notice of the charges against him; (2) a hearing where he is afforded the right

to call witnesses and present evidence when doing so is not "unduly hazardous to institutional safety or correctional concerns"; (3) the opportunity to have assistance from another inmate if the inmate charged is illiterate or the disciplinary hearing involves complex issues; (4) an impartial decision-maker; and (5) a written statement of the "evidence relied on and reasons for the disciplinary action." *See id.* at 563–66, 570–71.  There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel.  *Id.* at 568–69.

Federal courts do not "examin[e] the entire record, independent[ly] assess[] . . . the credibility of witnesses, or weigh[] . . . the evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 456 (1985).  The findings only demonstrate a violation of the inmate's due process rights if they are unsupported by any evidence or arbitrary.  *See id.* at 456–57.

### 1.   Weapons charge

Pevia believes his due process rights were violated when unidentified defendants, likely including Whiteman, pursued the weapons charge.  Pevia received written notice of the charges against him and was provided the opportunity to request evidence at the hearing.  ECF 11-2, at 2–5, 13.  Pevia entered into a plea agreement and waived his right to a hearing and to present evidence.  *Id.* at 5.  He received a written decision of the hearing officer's findings, and it was based on some evidence.  *Id.* at 9, 12–17, 18–20.  Pevia received all the process he was due.  The defendants are entitled to summary judgment on this claim.

### 2.   ARP investigation

Pevia claims his due process and "equal access" rights were violated when unidentified defendants did not preserve or consider video evidence that he believes would have supported his claim against Whiteman for confiscating his fan, even though they preserve and consider evidence in their own favor.  To the extent Pevia alleges this conduct was a constitutional violation, his

claim fails.   Prisoners have no constitutional right to the creation of, or participation in, an institutional grievance procedure.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Therefore, he has no right to the preservation of video evidence.  *See id.*  Moreover, as for the alleged seizure and destruction of his fan, in the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy.  *See Parratt v. Taylor*, 451 U. S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  The Supreme Court has extended its *Parratt* holding to intentional deprivations of property.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  "Maryland tort remedies provide an adequate avenue for relief."  *Morton v. Hopkins*, 819 F.2d 1138, 1987 WL 37537, at *1 (4th Cir. 1987) (Table) (citing *Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982)).  Therefore, even if Pevia's fan was confiscated, such a claim, standing alone, does not rise to a constitutional violation.  This claim is dismissed with prejudice.

### 3.  Use of restraints

Pevia claims unidentified defendants violated his due process rights by holding him in a strip cell for two-and-a-half hours before his hearing and by forcing him to wear restraints during the hearing.   Pevia does not identify any defendant who acted personally in these alleged violations.  *See Vinnedge*, 550 F.2d at 928.  For this reason alone, the claim does not survive a motion to dismiss.

Even if he had identified the individuals who were responsible for the alleged rights violations, he does not allege a viable due process claim.  As a maximum-security inmate assigned to disciplinary segregation, Pevia was in three-point restraints for approximately 4.5 hours before and during his inmate grievance hearing.  ECF 1-2, at 22.  For more than half that time, he was held in a strip cell with three-point restraints.  Short-term confinement to a holding cell does not

violate Pevia's right to due process.  *See Edwards v. Oberndorf*, 309 F. Supp. 2d 780, 788 (E.D. Va. 2003) (holding detainee's confinement to "administrative strip cell" for less than 20 hours after court ordered release did not violate due process). And short-term use of three-point restraints on a maximum-security inmate does not violate due process.  *See Williams v. Benjamin*, 77 F.3d 756, 769–70 & n.10 (4th Cir. 1996) (holding that due process rights of inmate placed in four-point restraints for eight hours without permitting him to wash off mace, to use toilet, or to receive medical attention, were not violated despite prison policy mandating that four point-restraints would not be used except as a last resort to prevent harm and with medical approval), *overruled on other ground by Wilkins v. Gaddy*, 559 U.S. 34 (2010).  The fact that Pevia was restrained during the hearing and could not access his notes or move about freely does not give rise to a constitutional violation.  He did not have a constitutional right to participate in a grievance process at all, let alone a right to be unrestrained during an inmate grievance hearing.  Further, Pevia does not allege a prison policy, as there was in *Williams*, that suggests the Maryland Department of Corrections has created a liberty interest in being free from the use of three-point restraints. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  This claim is dismissed with prejudice.[6]

## G.  Eighth Amendment Claim

To the extent Pevia argues in Count Three that unidentified defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment by using three-point

---

[6] Indeed, if the Court were to address this claim on summary judgment instead of on the defendants' motion to dismiss, it is highly unlikely Pevia could establish a protected liberty interest because DPSCS policy mandated that disciplinary segregation inmates such as Pevia be placed in three-point restraints for inmate grievance hearings due to safety concerns.  ECF 11-2, at 33.

restraints and holding him in a strip cell for more than two hours, his claim fails.  "The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'"  *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of . . . inmates."  *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986).  The deliberate indifference standard applies "where prison officials are accused of deliberate indifference to a substantial risk of serious harm to prison inmates."  *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)).  To prevail on an Eighth Amendment claim under this standard, a plaintiff must show that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] drawn the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994); *see also Thompson*, 878 F.3d at 97–98.

Pevia does not identify any defendant who acted personally in this alleged violation.  *See Vinnedge*, 550 F.2d at 928.  For this reason alone, the claim would not survive a motion to dismiss.

Moreover, the undisputed record reveals that Pevia, a disciplinary segregation inmate at a maximum-security facility, was restrained in three-point restraints during his hearing pursuant to prison policy and was confined to an isolation cell while awaiting the hearing.  Pevia has not alleged, much less shown, that he suffered any physical harm from his placement in the strip cell or the use of three-point restraints.  Pevia has not alleged any facts, or submitted any evidence, suggesting the defendants acted with "deliberate indifference" to his health and safety.  Further,

he has not alleged or submitted any evidence of injury or risk of harm.  The defendants are entitled to summary judgment on this claim.

**IV.     Conclusion**

The defendants' motion, treated in part as a motion to dismiss and in part as a motion for summary judgment, is granted.  The complaint is dismissed with prejudice as to the official capacity claims against the defendants and without prejudice as to the individual claims against defendants Jeff Nines, Officer Smith, Keith Arnold, and Secretary of Corrections.  Summary judgment is granted in favor of Whiteman on the retaliation claims against him in Count One. Summary judgment is granted in favor of defendants Hill, Werner, Roderick, and Whiteman on the equal protection and due process claims in Count One and the Eighth Amendment claim in Count Three.  The equal access and equal protection claims in Counts Two, the due process claim in Count Three, and the due process and retaliation claims in Count Four are dismissed with prejudice as to defendants Hill, Werner, Roderick, and Whiteman.[7]  A separate order follows.

March 28, 2023
_____                       _____
Date                                                      Deborah L. Boardman
                                                             United States District Judge

---

[7] Having found no constitutional violation the Court need not address the defendants' additional defenses and arguments.